17 N.J. Super. 278 (1952)
85 A.2d 829
ROSE PITARESI, ET AL., PLAINTIFFS,
v.
GRACE APPELLO, EXECUTRIX, ETC., ET AL., DEFENDANTS.
Superior Court of New Jersey, Hudson County Court Law Division.
Decided January 8, 1952.
*280 Mr. Dominick R. Rinaldi, attorney for plaintiffs (Mr. Alfred Brenner, of counsel).
Mr. Emil W.A. Schumann, attorney for defendants.
PROCTOR, J.S.C.
For the purpose of expediting the trial of the above cause, by settling in advance whether the plaintiffs have a cause of action, it was agreed that the plaintiffs' attorney would make the following opening to the court:
"On November 2nd, 1948, defendant was the owner of premises designated as No. 199 Eighth Street in Hoboken, New Jersey.
At 2:45 P.M. during the hours of daylight (between sunrise and sunset) on a dreary dismal day, plaintiff had visited a relative, a tenant, who resided on the second floor of the premises.
The apartment visited was one of several in the premises, which were four stories in height and constituted a tenement house.
There were no defects in the halls or stairways.
The only ground upon which plaintiffs predicate liability is that the hall of the second floor and the upper portion of the stairway were dark, but despite this fact there was no light burning in the hall on the second or first floors although fixtures for lighting were maintained on both floors and the defendant occupied an apartment in said premises.
The hall in question was so dark that a person could not read any document.
The building was erected prior to March 25th, 1904 (testimony as to this fact could be supplied by a representative of the City building department.)
Although there is no opinion on file with the Tenement House Board that the halls and stairs are not sufficiently lighted so that lights should have been kept burning during daylight hours, an inspector of the Board will testify that he inspected the hall on the second floor, that same was so dark that he could not read without artificial light and that he had to grope his way from the second floor landing to the upper portion of the stairway leading therefrom to avoid falling.
*281 On November 2nd, 1948, at 2:45 P.M., plaintiff, Rose Pitaresi, who had visited the apartment of her relative on many previous occasions, left this apartment, leaving the door open behind her. The distance from the doorway to the first step of the descending stairway is very short.
Said plaintiff found the hall, landing and stairway obscured in darkness. She had with her no matches or other equipment to furnish artificial light. She attempted to locate the first step and railing, with the location of which she was previously familiar and in so doing, because of the aforesaid darkness, she missed her footing, fell down the stairway and as a result thereof fractured her elbow.
Suit has been instituted to recover for this injury, for loss of employment and medical expenses."
Upon the above opening the defendant moves for a dismissal of the action on the ground that it does not state a cause of action.
It will be noted from the plaintiffs' opening that the accident occurred in daylight between sunrise and sunset; that the tenement house was four stories in height; that the only ground on which plaintiffs predicate liability is that the hall and stairway were dark; that no light was burning in the hall at the time of the accident; that the defendant landlord never assumed, by contract or otherwise, to light the said location between sunrise and sunset; that the Tenement House Board had never given an opinion that the said hallway and stairway were not sufficiently lighted.
Plaintiffs contend that R.S. 55:5-15, as amended L. 1947, c. 345, and R.S. 55:5-12, provisions of the Tenement House Act, show that it was the intent of the Legislature that halls and stairways "should at all times be sufficiently lighted for the protection of lawful users of the stairways * * *."
R.S. 55:5-15, as amended, provides that where the tenement house is over two stories and not over four stories in height a light shall burn in the entrance and third floor halls from sunset to sunrise and on the second and fourth floors from sunset to 10 o'clock each evening; further, where the tenement house is over three stories in height and where the public halls and stairs are, in the opinion of the Tenement House Board, not sufficiently lighted, the owner shall *282 keep a proper light burning in the hallways near the stairs upon each floor as may be necessary throughout the day. In the present case the happening occurred between sunrise and sunset, and it is admitted by the plaintiffs that the Tenement House Board never gave an opinion that this location was insufficiently lighted between sunrise and sunset. The defendant cannot be charged with any violation of the above section of the Tenement House Act.
R.S. 55:5-12 provides that in every tenement house erected prior to March 25, 1904, four stories or more in height, whenever a public hall on any floor is not lighted enough in the daytime to permit a person to read in every part thereof, without the aid of artificial light, the wooden panels in the doors located on the public halls and opening directly into the rooms shall be removed and ground glass or other translucent glass of an aggregate area of not less than five square feet for each door shall be substituted. Plaintiffs admit in their brief that the defendant had inserted such glass and had thus complied with this section of the statute.
It thus appears that no assertion is made in plaintiffs' opening that the defendant violated any express provision of the Tenement House Act. The duties imposed by the above penal statutes cannot be extended by implication. When the Legislature enlarges the common law duties imposed on a landlord the new duties must be so clearly set forth as to leave no doubt as to the legislative intention. Carlo v. Okonite-Callender Cable Co., 3 N.J. 253, 265 (1949).
Plaintiffs further contend that it is not necessary to show a violation of the above statute, or any penal statute, in order to sustain a cause of action based on negligence; that the common law remedy for acts of negligence is preserved, regardless of the statute. Plaintiffs then argue that under the common law the test as to negligence is "whether there was a discoverable danger which required correction," and they cite the following excerpt from Evers v. Davis, 86 N.J.L. 196 (E. & A. 1914), at page 203:
*283 "But whether the overt act be one of omission or commission, and whether the conduct of the defendant be stated in terms of `duty' or of `fault,' the one common denominator, so to speak, of the action of negligence is this element of what we may call discoverable danger; that is to say, a danger that is susceptible of being discovered in advance of action or inaction by the exercise of that degree of care which, if a man fails to exercise, he becomes civilly liable for the consequences of his conduct."
Pursuant to the above doctrine plaintiffs urge that, if the opening were supported by evidence, a jury could find the defendant guilty of negligence for the reason that the day was dismal and dreary, the hall and upper stairway were dark, this condition was discoverable by the defendant landlord, the turning on of artificial lighting would have eliminated the discoverable danger, any reasonable person would have realized that the failure to provide light under existing circumstances created a hazardous condition.
Liability for negligence must be predicated upon a violation of some duty which one person owes another. In the absence of such duty foreseeability of danger is not sufficient to impose liability. For example, one could foresee that danger would result to pedestrians because of the deterioration of the public sidewalk abutting his premises due to the elements and yet, not being under a duty to remedy it, would not be legally answerable to a person injured. Rupp v. Burgess, 70 N.J.L. 7, 9 (Sup. Ct. 1903). A specific duty, the violation of which is actionable, may arise from the general principles of the common law or may arise from the deviation from the standard of conduct imposed by a statute. Evers v. Davis, supra. Such a statute imposes a duty on the defendant toward the plaintiffs that takes the place of what would have been defendant's common law duty had the statute not been enacted, leaving the action of negligence in other respects unaffected by this statute. Carlo v. Okonite-Callender Cable Co., supra.
There being no violation of any duty arising from a statute, the next inquiry is: What was the defendant's duty at common law?
*284 Where, as here, a landlord retains control of the passageways and stairways for the common use of his tenants and their visitors, it is his duty to see that reasonable care is exercised to have such passageways and stairways reasonably safe and fit for use. Gillvon v. Reilly, 50 N.J.L. 26 (Sup. Ct. 1887). However, there is no common-law duty to maintain lights unless the landlord has assumed such duty. Gleason v. Boehm, 58 N.J.L. 475, 478 (Sup. Ct. 1896); Rhodes v. Fuller Land and Improvement Co., 92 N.J.L. 569, 571 (E. & A. 1918); Leech v. Atlantic Delicatessen Co., 104 N.J.L. 381, 384 (E. & A. 1928); Triggiani v. Olive Oil Soap Co., 12 N.J. Super. 227, 230 (App. Div. 1951).
There is no allegation in plaintiffs' opening that the defendant assumed the duty of maintaining lights in the daytime. Nor is there an allegation of any defect in the nature of a trap or pitfall; it is admitted that there were no defects in the halls or stairways. Cf. Putkowski v. Jarmoli, 9 N.J. Misc. 1189 (Sup. Ct. 1931).
I find that, giving the plaintiffs the benefit of the most favorable inferences from the facts stated in the opening, there is no showing that the defendant violated any duty owed to the plaintiffs. It is, therefore, unnecessary to consider the second ground of the defendant's motion, namely, contributory negligence of the plaintiff, Rose Pitaresi.
Defendant's motion is granted.