ANNA DEMETER, GENERAL ADMINISTRATRIX OF THE ESTATE OF MARGARET LYNCH, DECEASED, PLAIN-TIFF-APPELLEE, v. MORRIS ROSENBERG, DEFEND-ANT-APPELLANT.

Submitted May 11, 1934—Decided December 5, 1934.

Before Brogan, Chief Justice, and Justices Parker and Bodine.

For the plaintiff-appellee, *Jacob W. Silverman* (*Harry Cohn*, of counsel).

For the defendant-appellant, *Cox & Walburg* (*Harry E. Walburg*, of counsel).

The opinion of the court was delivered by

Brogan, Chief Justice. This is an appeal from a judgment recovered by the plaintiff as administratrix of the estate of her mother, for personal injuries suffered by her deceased mother during life. The injuries in question were occasioned by the deceased having fallen down the stairs of a three-family house in which she lived. This happened at six-thirty o'clock on the morning of December 13th, 1931. The stairs and hallways were unlighted at the time of the occurrence. She died on November 29th, 1932, from other causes, the accident not having brought about her death.

The appeal is argued on two general grounds, first, that reversible error was committed by the trial court in the admission of evidence and, secondly, that it was error to deny defendant's motion for nonsuit and for a direction of verdict.

The decedent was a tenant and lived on the second floor of the house in question. Another tenant, Mr. Gashlin, and his family lived on the first floor. The third floor was unoccupied. At about six-thirty in the morning Mr. Gashlin was

awakened from sleep by hearing a thumping noise outside his door. He went out into the hallway and found Margaret Lynch, the decedent, lying at the bottom of the staircase in an unconscious condition. She was carried into his apartment and remained unconscious until her married daughter, Annie Demeter, was summoned from her own home some distance away. She did not arrive at the scene until an hour and a half later. The testimony challenged is that the daughter, Annie, on her arrival, and seeing her mother in an unconscious condition, screamed, "Oh, mama, what happened to you?" The mother, who all during this interval had been unconscious, regained consciousness momentarily and answered the question of her daughter, saying, "Annie, I missed my step and fell down the stairs." The court admitted this testimony and the appellant argues that its admission constitutes legal error. The appellee defends the admission of the testimony on the ground that it was part of the *res gestæ*.

It is undisputed that the decedent was unconscious from the time she was found at the foot of the stairs up to the time her daughter, Annie Demeter, arrived and received the mother's reply in answer to her exclamation. Thereafter, without saying any more, decedent lapsed into unconsciousness and remained in that condition for the next twenty-four hours at which time she was taken to the hospital.

Declarations which are thus admitted under the doctrine of *res gestæ* are exceptions to the hearsay rule. It is difficult, if not impossible to lay down a legal principal that would cover each and every situation in which the *res gestæ* rule might be applied. The term itself is defined as "a statement or exclamation by an injured person, immediately after the injury, declaring the circumstances of the injury, or by a person present at such an occurrence." 3 *Wigmore on Evidence*, § 1746. It is the spontaneous statement or exclamation of such person usually made at the time of the happening. There are certain well recognized exceptions to this rule as to the time when the declaration is made. In this case, co-incident with her fall, admittedly the injured person lost consciousness. She remained unconscious until the arrival

of her daughter who, through fear or anguish, cried out suf-
ficiently to momentarily arouse her mother out of her uncon-
scious state during which conscious interval she said, "I
missed my step and fell down the stairs." This is one of
the exceptions to the general rule that the exclamation or
statement must be spontaneous. Wigmore has this to say
(vol. 3, § 1747):

"This general principle is based on the experience that,
under certain external circumstances of physical shock, a
stress of nervous excitement may be produced which stills the
reflective faculties and removes their control, so that the
utterance which then occurs is a spontaneous and sincere
response to the actual sensations and perceptions already pro-
duced by the external shock. Since this utterance is made
under the immediate and uncontrolled domination of the
senses, and during the brief period when consideration of
self-interest could not have been brought fully to bear by
reasoned reflection, the utterance may be taken as particu-
larly trustworthy (or, at least, as lacking the usual grounds
of untrustworthiness), and thus as expressing the real tenor
of the speaker's belief as to the facts just observed by him;
and may therefore be received as testimony to those facts.
* * * ."

The general test as to whether or not such declarations are
admissible as part of the *res gestæ* seems to be whether or not
the speaker has had time to reflect and make up his mind as
to the happening and then give utterance to a self-serving
statement. If the speaker has had such opportunity to reflect
and make a statement helpful to himself or if the statement
is a narrative, after the happening and lacking in spontaneity,
the statement is inadmissible. Such we think was not the
case here.

The court, in receiving this testimony as it did, was entitled
to receive it as spontaneous and concomitant with the hap-
pening. *Murphy* v. *Brown & Co.,* 91 *N. J. L.* 412, 416;
*State* v. *Kane,* 77 *Id.* 244; *State* ads. *Hunter,* 40 *Id.* 495;
*Trenton Passenger Railway* v. *Cooper,* 60 *Id.* 219.

Within the circumscription of these principles it is a mat-
ter of the court's sound discretion as to whether or not such

testimony should be accepted or rejected. In admitting the testimony there was no departure from sound discretion.

The second point argued is that there should have been a nonsuit at the end of the plaintiff's case or a direction of verdict, which motion was also made at the end of the plaintiff's case, the defendant having offered no testimony whatever in his own behalf.

Bearing in mind the rule that the testimony of the plaintiff, on motions of this character and under these circumstances, is to receive full credence by the court together with every legitimate inference the testimony would bear, we do not think it was error to have denied both motions. It was the duty of the defendant, under the statute, to have had a light in the lower hall and in the hallway of the second floor outside of the apartment of the injured woman all during the night. *Hellmuth* v. *Kruger,* 102 *N. J. L.* 245.

The plaintiff's case disclosed that at half past six in the morning in the middle of December, in this hallway, it was "pitch dark;" that there were no lights at all in the hallway. The mandate of the statute required the defendant-owner, this being a tenement house over two stories, to keep a light burning in the hallway on the ground floor and on the second floor all night. Section 126, Tenement House act, 1904, page 126; amended *Pamph. L.* 1928, *ch.* 73, *p.* 174; *Pamph. L.* 1930, *ch.* 242, *p.* 1065. *Hellmuth v. Kruger, supra.* The failure of the defendant to have lights, as required by statute, was a violation of a duty he owed the decedent and the other occupants of the premises. The violation of the requirement of this penal statute is an incident of negligence. The jury, therefore, on receiving the case, was entitled to infer that the injured woman, a tenant, was familiar with the hall and staircase even in its darkened condition and that her fall and consequent injuries were caused by the neglect of the defendant in failing to provide lights as required by law. These are legitimate, probable inferences that the jury was entitled to draw and determine as facts. *Kargman* v. *Carlo,* 85 *N. J. L.* 632, 637; *Jackson* v. *Delaware, Lackawanna and Western Railroad,* 111 *Id.* 487.

The judgment is affirmed, with costs.